522 So.2d 956 (1988)
Mollie B. SMITH, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BS-327.
District Court of Appeal of Florida, First District.
March 18, 1988.
Francis A. Solorzano, Florida Rural Legal Services, Inc., Bartow, for appellant.
Jack Emory Farley, Sr. Atty., Dept. of Health and Rehabilitative Services, Tampa, for appellee.
*957 PER CURIAM.
This cause is before us on appeal from a final order of the Department of Health and Rehabilitative Services (HRS), disqualifying appellant from participation in the food stamp program due to an intentional program violation. Appellant argues that HRS failed to present clear and convincing evidence of appellant's intent to commit an intentional program violation. We agree and reverse.
An administrative disqualification hearing was held on September 16, 1986, to determine whether appellant could be sanctioned for allegedly committing an intentional program violation in connection with her family's receipt of food stamps. Two employees from HRS's Office of Overpayment, Fraud, and Recoupment (OOFR) were present and placed under oath. Neither appellant nor any other witness appeared.
The hearing officer identified HRS as having the burden of proof by clear and convincing evidence. HRS based its case on allegations that appellant failed to report income from employment on her food stamp application.
HRS identified and presented certain documents as follows:
1. A food stamp application dated November 27, 1984, signed by appellant and her husband, showing the social security check of appellant's husband as the only reported income, with a notice of verification/penalty warning signed by appellant.
2. A rights and responsibilities form signed by appellant at an interview on December 6, 1984.
3. A food stamp work sheet completed at the December 1984 interview reporting social security as the only income, an anticipated change dealing with grandchildren who were leaving the household at a later date, and indicating that appellant's rights and responsibilities were explained during the interview.
4. A food stamp record dated December 7, 1984, certifying appellant's household as eligible for food stamps for January 1985 through March 1985, based on a reported income of $382 per month in social security income.
5. A food stamp application for recertification dated March 7, 1985, signed by appellant's husband and an authorized representative on March 5, 1985, showing no reported income from work with a notice of verification/penalty warning signed by appellant.
6. A rights and responsibilities form signed by appellant and dated April 3, 1985.
7. A request for verification containing a section on reporting changes dated April 3, 1985, requesting proof of savings and the husband's disability.
8. A food stamp work sheet which a certified worker completed on April 10, 1985, listing $395 in social security income as the only reported income, and indicating that rights and responsibilities were explained to the household.
9. A food stamp record dated April 10, 1985, showing certification of food stamps from April 1985 through September 1985.
10. An income verification report generated by the Auditor General indicating that appellant earned $303.60 in unreported income during the first quarter of 1985 from the Polk County School Board.
11. An HRS Form 2630 dated September 18, 1985, and prepared by a food stamp worker making a nonfraud referral to OOFR after an interview with appellant, who stated that she did not report the income from the school board because it was nonpermanent and part-time work.
12. A reply from a request for verification of employment from the Polk County School Board listing the dates and amount of pay that appellant received, with a notation that a telephone call verified the listed dates and pay periods.
13. A report of claim determination dated March 28, 1986, showing $66 in overissuance of food stamps.
14. A copy of the microfiche food stamp issuance history from June 1983 to December 1985, showing the dates and amounts of food stamp benefits received.
*958 15. A rights and responsibilities form dated January 5, 1984, signed by appellant.
HRS felt that appellant understood her responsibility to report income on an application and subsequent changes in reported income because she had received food stamps for a long time. HRS requested that appellant be disqualified from the food stamp program for six months because she had failed to report her income from the Polk County School Board. Neither of HRS's employees from OOFR claimed to have any personal knowledge of the allegations made or of the information contained in the documents submitted to the hearing officer.
The hearing officer's final order dated February 13, 1987, found that appellant committed an intentional program violation. He imposed a six-month disqualification penalty on appellant.
We agree with appellant that the hearing officer erred in disqualifying appellant based solely on the above-mentioned documentary evidence. The Code of Federal Regulations defines an intentional violation as follows:
For purposes of determining through administrative disqualification hearings whether or not a person has committed an intentional program violation, intentional program violations shall consist of having intentionally: (1) made a false or misleading statement, or misrepresented, concealed or withheld facts, or (2) committed any act that constitutes a violation of the Food Stamp Act, the Food Stamp Program Regulations, or any State statute relating to the use, presentation, transfer, acquisition, receipt, or possession of food stamps coupons... . (emphasis added).
7 C.F.R. § 273.16(c) (1986).
Furthermore, HRS must prove the intent to commit an intentional program violation by clear and convincing evidence. The Code of Federal Regulations provides:
The hearing authority shall base the determination of intentional program violation on clear and convincing evidence which demonstrates that the household member(s) committed, and intended to commit, intentional program violation as defined in paragraph (c) of this section. (emphasis added).
7 C.F.R. § 273.16(e)(6) (1986).
"Clear and convincing evidence" is an intermediate standard of proof, more than the "preponderance of the evidence" standard used in most civil cases, and less than the "beyond a reasonable doubt" standard used in criminal cases. See State v. Graham, 240 So.2d 486 (Fla. 2d DCA 1970). In Slomowitz v. Walker, 429 So.2d 797, 800 (Fla. 4th DCA 1983), the court held that:
Clear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.
The evidence presented below is insufficient to meet this heavy burden. HRS produced no witnesses at the hearing. The hearing officer based his finding entirely on documentary evidence representing certain facts. These facts merely show that appellant engaged in part-time work for which she received small amounts of unreported income. The unreported income resulted in the overissuance of $66 in food stamps to appellant's family. When appellant first discussed the earnings with her social worker, she explained that she did not know she had to report nonpermanent and part-time work. The social worker accepted that explanation and made a nonfraud referral to OOFR. Based on these facts, the hearing officer erred in finding clear and convincing evidence of appellant's intent to commit an intentional program violation.
HRS argues that the lack of a contemporaneous objection precludes this court's review of the sufficiency of the evidence. This argument is without merit. In most judicial and administrative proceedings, nonappearance by one party usually results *959 in dismissal of the action or judgment by default. See, e.g., Fla.R.Civ.P. 1.500, Fla. Admin. Code Rule 10-2.061. However, the Code of Federal Regulations provides that "[e]ven though the household member is not represented, the hearing official is required to carefully consider the evidence and determine if intentional program violation was committed on clear and convincing evidence." 7 C.F.R. § 273.16(e)(4) (1986), in pertinent part.
Section 120.68(13)(a), Florida Statutes, allows this court to give mandatory, prohibitory, and declaratory relief and to order agency action or exercise of discretion required by law, set aside agency action, remand the case, or to decide the rights, privileges, obligations, requirements or procedures at issue. Appellant is entitled to judicial review of this adverse action pursuant to Section 120.68(1), Florida Statutes. The lack of a procedural objection does not preclude her right to challenge the sufficiency of the evidence as required by law. The requirement that HRS prove its case by clear and convincing evidence would be meaningless if the household member could not question the sufficiency of that evidence.
Mere failure to report income does not establish by clear and convincing evidence that there was intent to commit an intentional program violation. Therefore, the hearing officer erred in disqualifying appellant from the food stamp program. The resolution of the case on this issue makes it unnecessary to address other questions raised by appellant. We conclude by noting that this case shows and brings into sharp focus the need for a better screening procedure involving an exercise of agency discretion.
REVERSED.
BOOTH, WIGGINTON and ZEHMER, JJ., concur.