2545

ANONYMOUS (M-156-90), Respondent v. The STATE BOARD OF MEDICAL EXAMINERS, Appellant.

(473 S.E. (2d) 870)

Court of Appeals

See also — S.C. —, 467 S.E. (2d) 258.

---

*Daryl G. Hawkins* and *Pete Kulmala,* both of *Lewis, Babcock & Hawkins;* and *Richard P. Wilson* and *John A. Birgerson,* both of *South Carolina Department of Labor, Licensing & Regulation,* Columbia, *for appellant.*

*Charles E. Carpenter, Deborah H. Sheffield* and *Samuel F. Crews, III,* all of *Richardson, Plowden, Grier & Howser;* and *William H. Davidson, II,* Columbia, *for respondent.*

*Samuel L. Finklea, III* and *Carlisle Roberts, Jr., for S.C. Department of Health & Environmental Control; Harry T. Cooper, Jr., Nicholas P. Sipe* and *William L. Todd, for S.C. Department of Revenue & Taxation;* and *Gwendolyn L. Fuller* and *Lee P. Jedziniak, for S.C. Department of Insurance,* Columbia, *for Amici Curiae.*

Heard June 8, 1996.

Decided July 15, 1996; Reh. Den. Aug. 22, 1996.

ANDERSON, Judge:

The State Board of Medical Examiners (the Board) appeals the circuit court's reversal of the Board's decision to publicly reprimand a physician, Anonymous, and place his license in a probationary status for an indefinite period. We reverse and remand.

### FACTS/PROCEDURAL BACKGROUND
The Board alleged Anonymous violated provisions of the South Carolina Medical Practice Act, S.C. Code Ann.

§ 40-47-5, *et seq.* (1986), and the Rules and Regulations of the State Board of Medical Examiners, 26 S.C. Code Ann. Regs. 81-1 to 81-100 (1976). Medical disciplinary proceedings are authorized pursuant to these cited statutory provisions and regulations. Specifically, the Board alleged Anonymous violated S.C. Code Ann. § 40-47-200(7), (8), and (12) (1986) and Regulation No. 81-60(A), (C), and (D) by engaging in unethical and unprofessional physical contact during prostate examinations of several patients. Anonymous denied the allegations.

On August 14, 1991, a hearing was held before a three-member panel of the Medical Disciplinary Commission. The Panel issued its certified report on September 24, 1991, finding that Anonymous violated S.C. Code Ann. § 40-47-200(7), (8), and(12) (1986), and Regulation 81-60(A), (C), and (D).

Following receipt of the Panel's report, Anonymous appealed the Panel's decision to the Board. The Board conducted a final order hearing. In its final order, the Board issued a public reprimand and placed Anonymous on indefinite probation.

Anonymous appealed the Board's final order to the circuit court. The circuit court reversed the Board, ruling that the "evidence against the Petitioner in this case is neither reliable, probative, nor substantial and that the Board's decision is clearly erroneous."

On appeal, the Board argues the final order is supported by substantial evidence in the record and that the circuit court impermissibly substituted its judgment for that of the Board with respect to the weight of the evidence on fact questions. Anonymous contends: (1) the circuit court correctly found the Board's findings clearly erroneous because there is no reliable, probative, or substantial evidence to support such conclusions; and (2) the Board denied his due process rights by applying a preponderance of the evidence, as opposed to a clear and convincing standard of proof.

## ISSUES

1) Which standard of proof, preponderance of evidence or clear and convincing, should be applied by the Board of Medical Examiners in an administrative disciplinary proceeding?
2) Is the decision of the Board of Medical Examiners clearly erroneous because there is no reliable, probative, or substantial evidence in the record?

## LAW/ANALYSIS

The South Carolina Administrative Procedures Act (APA), S.C. Code Ann. § 1-23-310, *et seq.* (1986), governs the Board's action. *Boggs v. State Bd. of Medical Examiners*, 288 S.C. 144, 341 S.E. (2d) 635 (1986); *see also* S.C. Code Ann. § 1-23-310(1) (1986 & Supp. 1992) ("As used in this article . . . '[a]gency' means each state board . . . authorized by law to make rules or to determine contested cases"); S.C. Code Ann. § 40-47-20 (1986 & Supp. 1995) ("The Board shall adopt rules and regulations for its government, for the practice of medicine . . . , for judging the professional and ethical competence of physicians and surgeons including a code of medical ethics, and for the discipline of physicians and surgeons. . . ."). South Carolina Code Ann. § 1-23-330(1) (1986) provides that the rules of evidence as applied in civil cases apply in APA proceedings. However, the APA is silent as to the standard of proof. *See* S.C. Code Ann. §§ 1-23-310 to -660 (1986 & Supp. 1995). The Regulations governing the Board are also silent as to the standard of proof. *See* 26 S.C. Code Ann. Regs. 81-1 to 81-100 (1976).

Anonymous argues the Board denied his due process rights by applying a preponderance of the evidence standard of proof. He further contends due process requires the State Board prove professional misconduct justifying discipline by clear and convincing evidence. We agree.

## PROCEDURAL DUE PROCESS

The guarantee of due process found in the fourteenth Amendment of the Federal Constitution declares that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Due process of law is one of the most important guarantees found in the United States Constitution.

Due process encompasses "[a]ll rights which are of such fundamental importance as to require compliance with due process standards of fairness and justice" and includes "[p]rocedural . . . rights of citizens against government actions that threaten the denial of life, liberty, or property." Black's Law Dictionary 501 (6th ed. 1990).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the

Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed. (2d) 18 (1976). " '[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748-49, 6 L.Ed. (2d) 1230, *reh'g denied*, 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed. (2d) 70 (1961) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). "Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Lassiter v. Department of Social Services*, 452 U.S. 18, 24, 101 S.Ct. 2153, 2158, 68 L.Ed. (2d) 640, *reh'g denied*, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed. (2d) 1023 (1981). "Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consist of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter*, 452 U.S. at 24-25, 101 S.Ct. at 2158. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed. (2d) 484 (1972). "[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902.

The Fourteenth Amendment articulates a prohibition against any state deprivation of life, liberty, or property without due process of law. The rule is enunciated in *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed. (2d) 711 (1977):

> Application of this prohibition requires the familiar two-stage analysis: We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty or property"; if protected interests are implicated, we then must decide what procedures constitute "due process of law."

*Ingraham*, 430 U.S. at 672, 97 S.Ct at 1413. *See also* 16A Am. Jur. (2d) *Constitutional Law* § 815 (1979) (discussing require-

ments and applicability of procedural due process).

"When the State seeks to revoke a professional license, procedural due process rights must be met." *Zaman v. South Carolina State Bd. of Medical Examiners*, 305 S.C. 281, 284, 408 S.E. (2d) 213, 215, *cert. denied*, 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed. (2d) 160 (1991).

In *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed. (2d) 323 (1979), the United States Supreme Court discussed the function of standards of proof:

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." In *re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, [1076] 25 L.Ed. (2d) 368, 51 Ohio Ops. (2d) 323 (1970) (Harlan , J., concurring).

*Addington*, 441 U.S. at 423, 99 S.Ct. at 1808.

"[I]n any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk or error should be distributed between the litigants." *Santosky v. Kramer*, 455 U.S. 745, 755, 102 S.Ct. 1388, 1395, 71 L.Ed. (2d) 599 (1982).

The Supreme Court recognized that there is a continuum of three standards of proof:

> At one end of the spectrum is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion.
>
> In a criminal case, on the other hand, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. (Footnote omitted.) In the administration of criminal justice, our society imposes almost the entire risk or

error upon itself. This is accomplished by requiring under the Due Process Clause that the state prove the guilt of an accused beyond a reasonable doubt. In *re Winship, supra.*

The intermediate standard, which usually employs some combination of the words "clear," "cogent," "unequivocal," and "convincing," is less commonly used, but nonetheless "is no stranger to the civil law." *Woodby v. INS,* 385 U.S. 276, 285, 87 S.Ct. 483 [488], 17 L.Ed. (2d) 362 (1966). *See also* C. McCormick, *Evidence* § 320 (1954); 9 J. Wigmore, *Evidence* § 2498 (3d ed. 1940). One typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof.

*Addington,* 441 U.S. at 423-24, 99 S.Ct. at 1808.

"[T]he degree of proof required in a particular type of proceeding 'is the kind of question which has traditionally been left to the judiciary to resolve.' " *Santosky v. Kramer,* 455 U.S. 745, 755-56, 102 S.Ct. 1388, 1395-96, 71 L.Ed. (2d) 599 (1982) (quoting *Woodby v. INS,* 385 U.S. 276, 284, 87 S.Ct. 483, 487, 17 L.Ed. (2d) 362 (1966)).

In *Santosky, supra,* the United States Supreme Court articulated when the clear and convincing standard of proof was applicable:

This Court has mandated an intermediate standard of proof—"clear and convincing evidence"—when the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere loss of money." Notwithstanding "the state's 'civil labels and good intentions,' " the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma." (Citations omitted.)

*Santosky,* 455 U.S. at 756, 102 S.Ct. at 1396.

"The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss. . . .' " *Goldberg v. Kelly*, 397 U.S. 254, 262-63, 90 S.Ct. 1011, 1017-18, 25 L.Ed. (2d) 287 (1970) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646-47, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). "Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the factfinder turns on both the nature of the private interest threatened and the permanency of the threatened loss." *Santosky*, 455 U.S. at 758, 102 S.Ct. at 1397.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. (2d) 18 (1976), the United States Supreme Court developed a balancing test that it still utilizes in deciding procedural due process questions:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 334-35, 96 S.Ct. at 903.

In *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed. (2d) 323 (1979), a civil commitment case, the Supreme Court applied the balancing test it developed in *Mathews, supra*, and determined that the clear and convincing standard of proof employed by the trial court was constitutionally adequate and met the requirements of due process. In *Santosky v. Kramer, supra*, a parental rights termination case, the United States Supreme Court applied the three *Mathews* factors and concluded that, in parental rights termination proceedings, the fair preponderance of the evidence standard was inconsistent with due process.

In the case *sub judice*, under *Mathews v. Eldridge, supra*, we must first examine "the private interest that will be af-

fected by the official action." *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The permanency of the loss must also be considered. *Santosky*, 455 U.S. at 758, 102 S.Ct. at 1397.

The Board decided to publicly reprimand Anonymous, impose a substantial fine, and place his license on probationary status for an indefinite period. Proceedings seeking suspension or revocation of the license of a professional are serious matters. Quite literally, the professional's ability to earn a living is at stake. Our society places great value on personal reputation. When the State brings a professional disciplinary action accusing a physician of quasi-criminal conduct and seeking to revoke the physician's license to practice medicine, the defendant physician's interests are of enormous magnitude. Accusations of being untrustworthy, unethical, incompetent, deceitful, and fraudulent are charges which impose profound stigmas upon Anonymous' professional and private life. Anonymous has a substantial protected interest in his ability to practice his chosen profession, and in protecting his good name from charges of illegal, unethical, and unprofessional conduct.

Thus, the first *Mathews factor*—the private interest affected—weighs heavily against use of the preponderance standard in a professional disciplinary proceeding.

The next factor to be weighed in accordance with *Mathews v. Eldridge* is "the risk of an erroneous deprivation of [Anonymous'] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335, 96 S.Ct. at 903. The *Santosky* Court stated that *Mathews* requires consideration of "both the risk of erroneous deprivation of private interests resulting from use of a 'fair preponderance' standard and the likelihood that a higher evidentiary standard would reduce that risk." *Santosky*, 455 U.S. at 761, 102 S.Ct. at 1399. We also must determine "whether a preponderance standard fairly allocates the risk of an erroneous factfinding between these two parties." *Id.*

One significant factor noted by the Court when requiring a higher standard of proof is that the proceeding pits the State directly against the individual defendant, as in a criminal trial, and thus increases the risk of error in the fact finding. A professional disciplinary proceeding contains some indicia of a

criminal trial. Section 40-47-200, S.C. Code Ann. (1986 & Supp. 1992), provides that "the board may either dismiss the complaint or find that the licensee is **guilty** of misconduct meriting sanction." (Emphasis added.)

The Board is "empowered by § 40-47-20 . . . to adopt and publish rules in its Annual Directory regulations for the practice of medicine. . . ." 26 S.C. Code Ann. Reg. 81-1 (1976). In Regulation 81-1, the Board "outlines its specific responsibilities to include, but not be limited to, the duty to receive, entertain, inquire into, take proofs and make findings . . . concerning complaints of misconduct . . . on the part of any physician licensed to practice medicine . . . in this State."

All these factors demonstrate the possibility of unfairness in the process and the potential for error in the fact finding. "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427, 99 S.Ct. at 1810.

In striking the appropriate due process balance under *Mathews v. Eldridge*, the final factor to be assessed is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. A heightened evidentiary standard would impose a very limited, if any, increased administrative burden on the Board. Additionally, the public has a legitimate interest in the continued services of qualified medical doctors.

In medical disciplinary proceedings. "the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." *Santosky*, 455 U.S. at 758, 102 S.Ct. at 1397. "Evaluation of the three [*Mathews*]factors compels the conclusion that use of a 'fair preponderance of the evidence' standard in such proceedings is inconsistent with due process." *Id.* We conclude that Anonymous' interest in the outcome of his professional disciplinary proceeding is of such weight and gravity that due process requires the State to justify suspension by proof more substantial than a mere preponderance of the evidence.

## QUASI-CRIMINAL NATURE OF PROCEEDINGS

Anonymous avers the Board should have applied the clear and convincing standard of proof in this case because of the quasi-criminal nature of the proceedings.

*United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed. (2d) 742, *reh'g denied*, 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed. (2d) 1179 (1980), sets out the two-step inquiry traditionally used by the Supreme Court when determining whether a penalty is quasi-criminal:

> This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. (Citations omitted.)

*Ward*, 448 U.S. at 248-49, 100 S.Ct. at 2641.

In making a determination under the second step, the United States Supreme Court refers to seven criteria, listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed. (2d) 644 (1963), which, though neither exhaustive not dispositive, it finds "useful" in categorizing a particular penalty as quasi-criminal:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry. . . . (Footnotes omitted.)

*Kennedy*, 372 U.S. at 168-69, 83 S.Ct. at 567-68.

In *In re Ruffalo*, the United States Supreme court stated disbarment proceedings "are adversary proceedings of a quasi-criminal nature." *In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed. (2d) 117, *reh'g denied*, 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed. (2d) 874 (1968). "Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer." *Id.* at 550, 88 S.Ct. at 1226. "He is accordingly entitled to procedural due process. . . ." *Id.*

"Disbarment proceeding, though not strictly either a civil or criminal proceeding, is akin to both, and proof must be clear and convincing to warrant disbarment of attorney in accordance to rule even in ordinary civil cases where defendant is charged with fraudulent conduct." *Ex parte Redmond*, 156 Miss. 439, 125 So. 833 (1930). "This proceeding is quasi criminal in its nature, and . . . the charges must be sustained by convincing proof to a reasonable certainty, and any reasonable doubts should be resolved in favor of the accused." *Golden v. State Bar of Cal.*, 213 Cal. 237, 2 P. (2d) 325, 329 (1931). The evidence should be "of such a character that it satisfies the court to a reasonable certainty that the charges are true." *State ex rel. Stapleton v. Wines*, 21 Mont. 464, 54 P. 562 (1898).

"Application of this intermediate standard permeates a line of United States Supreme Court decisions declaring that 'clear and convincing' evidence is required in various quasi-criminal proceedings or where the proceedings threaten the individual involved with a significant deprivation of liberty or with a stigma." *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 737 P. (2d) 595, 602 (1987). "The 'proper occasion' for interpolating an intermediate measure of proof is in cases that are between 'civil' and 'criminal' and where what is to be established is akin to 'guilt.' " *Id.* 737 P. (2d) at 603 (quoting *Mutual of Enumclaw Ins. v. McBride*, 295 Or. 398, 667 P. (2d) 494, 498 (1983)).

"This court has required a higher burden of proof . . . '[i]n the class of cases involving fraud, of which undue influence is a specie, gross negligence, and civil actions involving criminal acts.' " *Wangen v. Ford Motor Co.*, 97 Wis. (2d) 260, 294 N.W. (2d) 437, 457 (1980) (quoting *Kuehn v. Kuehn*, 11 Wis. (2d) 15, 104 N.W. (2d) 138, 145 (1960)). "The middle standard for burden of proof was established by this court as applicable to

more serious allegations than factual issues in the usual civil case." *Wangen*, 294 N.W. (2d) at 458. "This court has stated that 'a greater degree of certitude is required before there is a finding against a defendant who will be subjected to the stigma attached to the commission of certain classes of acts.'" *Id.* (quoting *Layton School of Art & Design v. WERC*, 82 Wis. (2d) 324, 262 N.W. (2d) 218, 236 (1978)).

"Generally, the greater the alleged conduct deviates from that normally expected, the greater the burden of proof that will be required to prove that conduct." *Bacon v. Bacon*, 3 Va. App. 484, 351 S.E. (2d) 37, 40 (1986).

It is clear that the allegations against Anonymous are quasi-criminal. Further, the Board conceded at oral argument that the allegations are quasi-criminal.

### CLEAR AND CONVINCING STANDARD OF PROOF

While the legislature and the courts have established clear and convincing evidence as the standard of proof in numerous situations, neither has specifically addressed the issue of the burden of proof in administrative disciplinary proceedings.

Other jurisdictions considering the proper standard of proof to be applied in a professional disciplinary proceeding have consistently adopted the clear and convincing standard. A case strikingly similar to the fact and law scenario involved herein is *Silva v. Superior Court (Heerhartz)*, 14 Cal. App. (4th) 562, 17 Cal. Rptr. (2d) 577 (1993):

> Section 11529 is silent as to the standard of proof to be applied by the ALJ at the hearing on the Board's application for an interim order.
>
> Silva contends the ALJ erroneously applied the preponderance of the evidence standard of proof at her section 11529 hearing. We agree.
>
> In *Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal. App. (3d) 853, 856, 185 Cal. Rptr. 601, the court held the "clear and convincing proof to a reasonable certainty" standard of proof applies at Board administrative proceedings to revoke or suspend a medical license. The *Ettinger* court explained that the higher "clear and convincing" standard has been applied in disciplinary proceedings against other professional licensees, such as real estate brokers and attorneys. Although attorney disci-

pline proceedings have a "nature all their own, neither civil nor criminal," nevertheless the purpose of attorney discipline proceedings and doctor license suspension proceedings is identical. "Since it is apparent that the underlying purpose of disciplining both attorneys and physicians is protection of the public, it would be anomalous to require a higher degree of proof in disciplinary hearings involving attorneys or real estate agents than in hearings involving physicians." (*Id.* at pp. 855-856, 185 Cal. Rptr. 601.)

*Silva,* 17 Cal. Rptr. (2d) at 580.

Explicating the issue with clarity is *Nair v. Department of Business & Professional Regulation,* 654 So. (2d) 205 (Fla. Dist. Ct. App. 1995):

The revocation or suspension of a professional license is of sufficient gravity and magnitude to warrant a standard of proof greater than a mere preponderance of the evidence. The correct standard for revocation or suspension of a professional license is that the evidence must be clear and convincing. (Citations omitted.)

*Nair,* 654 So. (2d) at 206-7.

The Supreme Court of Nebraska elucidates the issue in *Davis v. Wright,* 243 Neb. 931, 503 N.W. (2d) 814 (1993):

The disciplinary proceedings of physicians and attorneys serve the same purpose: protection of the public interest. We see no justification for differentiating between the two professions in this regard and hold that the allegations made in disciplinary proceedings in either case must be proved by clear and convincing evidence.

*Davis,* 503 N.W. (2d) at 819.

The South Carolina Supreme Court has never specifically defined "clear and convincing evidence"; however, in her dissent in *Wise v. Broadway,* 315 S.C. 273, 433 S.E. (2d) 857 (1993), Justice Toal defined clear and convincing evidence:

Clear and convincing evidence is an elevated standard of proof, which lies between the lesser standard of "preponderance of the evidence," used in most civil cases, and the higher standard of "beyond a reasonable doubt,"

which is required in criminal cases. *Smith v. Dept. of Health and Rehabilitative Svcs.*, 522 So. (2d) 956 (Fla. Ct. App. 1988).

*Wise*, 315 S.C. at 282, 433 S.E. (2d) at 862.

The Florida Appeals Court's discussion of the clear and convincing standard of proof in *Slomowitz v. Walker*, 429 So. (2d) 797 (Fla. Dist. Ct. App. 1983), is enlightening:

> [C]lear and convincing evidencing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

*Slomowitz*, 429 So. (2d) at 800. *See also Mississippi State Bd. of Nursing v. Wilson*, 624 So. (2d) 485 (Miss. 1993) ("The standard of proof required for a decision of the Board of Nursing is cases involving fraud or conduct deemed quasi-criminal in nature is clear and convincing evidence."); *In re Zar*, 434 N.W. (2d) 598 (S.D. 1989) (holding that clear and convincing evidence is the appropriate standard of proof to be utilized by an agency in matters concerning the revocation of a professional license); *Garber v. Department of Social Welfare*, 139 Vt. 487, 431 A. (2d) 469 (1981) (willful withholding of information, as result of which Department of Social Welfare would be allowed to recoup welfare overpayments from current assistance payments, must be established by clear and convincing evidence); *Bernard v. Oregon State Bd. of Dental Examiners*, 2 Or. App. 22, 465 P. (2d) 917 (1970) (in license revocation proceedings, any fraud or misrepresentation must be proved by clear, satisfactory and convincing evidence); *Fallon v. Wyoming State Bd. of Medical Examiners*, 441 P. (2d) 322 (Wyo. 1968) (in a physician disciplinary proceeding before the State Board, complainants had burden of proving, by clear and convincing evidence, charges that physician used false or fraudulent statements in his medical practice).

In South Carolina, attorney disciplinary proceedings are governed by an evidentiary standard requiring clear and con-

vincing proof. *See In re Walker*, 305 S.C. 482, 409 S.E. (2d) 412 (1991) (Supreme Court held there was clear and convincing evidence that attorney engaged in misconduct by forging circuit judge's signature on expungement order); *see also In re Beattie*, 275 S.C. 305, 270 S.E. (2d) 624 (1980) (Supreme Court ruled Panel's findings of facts regarding misconduct of attorney who solicited business were supported by clear and convincing evidence); *In re Brooks*, 274 S.C. 601, 267 S.E. (2d) 74, *cert. denied*, 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed. (2d) 246 (1980) (Supreme Court found there was clear and convincing proof that attorney financed a drug deal and, as a result, should be disbarred); *In re Friday*, 263 S.C. 156, 208 S.E. (2d) 535 (1974) ("[P]roof of any charge of alleged misconduct [by an attorney] must be clear and convincing. . . .").

In addition, South Carolina case law requires "[a] factual finding of judicial misconduct [to] be supported by clear and convincing evidence." *In re Gravely*, — S.C. —, 467 S.E. (2d) 924 (1996) (Supreme Court found record contained clear and convincing evidence that magistrate engaged in sexual relations with a *pro se* litigant; because magistrate resigned, public reprimand was the most appropriate and most severe sanction that could be imposed). *See In re Edwards*, — S.C. —, 459 S.E. (2d) 837 (1995) (finding of judicial misconduct by magistrate was supported by clear and convincing evidence).

Attorney and judicial disciplinary proceedings are distinguishable from professional disciplinary proceedings, such as the one at issue here. Neither the Legislature nor the Administrative Procedures Act governs attorney or judicial disciplinary proceedings. "[T]he duty of making a final adjudication with respect to the professional conduct of members of the Bar and taking appropriate disciplinary action rests exclusively" with the South Carolina Supreme Court. *In re Walker*, 305 S.C. at 485, 409 S.E. (2d) at 414. However, the Board was created by the Legislature and charged with the responsibility of administering the laws and regulations which govern the practice of medicine and are promulgated by the Legislature. The duty of making a final adjudication with respect to the professional conduct of physicians rests with the Board. The Legislature authorized the Board to take disciplinary action against physicians pursuant to S.C. Code Ann. § 40-47-200 (Supp. 1995). These professional disciplinary proceedings

are subject to the requirements of the APA.

■ We therefore hold that in a professional disciplinary proceeding under the APA, including one involving a physician, the standard of proof required is clear and convincing evidence. *In re Gravely*, — S.C. at —, 467 S.E. (2d) at 925; *In re Walker*, 305 S.C. at 486, 409 S.E. (2d) at 414; *cf. Mississippi State Bd. of Nursing v. Wilson*, 624 So. (2d) 485 (Miss. 1993) (in an administrative hearing to revoke the license of a professional nurse involved in fraud or quasi-criminal conduct, the standard of proof is clear and convincing evidence).

### ERROR PRESERVATION

Initially, the Board contends that Anonymous did not raise the issue of standard of proof to the Board and that, concomitantly, the issue is not preserved for appeal. Anonymous responds that the Board did not identify the standard used. Further, the standard used by the Board is not readily apparent from the Board's order.

■ As a general rule, an issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review. Issues not raised in the trial court will not be considered on appeal. *State v. Hudgins*, — S.C. —, 460 S.E. (2d) 388 (1995), *cert. denied*, — U.S. —, 116 S.Ct. 821, 133 L.Ed. (2d) 764 (1996) (defendant's claim that his due process rights were violated because he was not presented at pretrial hearing during which trial judge decided to bring in jury from another county because of pretrial publicity was not preserved, where defendant did not object to his absence from pretrial hearing); *Smith v. Phillips*, — S.C. —, 458 S.E. (2d) 427 (1995) (but for very few exceptional situations, appellate court cannot address issue unless it was raised to, and ruled upon by, trial court); *Schofield v. Richland County Sch. Dist.*, 316 S.C. 78, 447 S.E. (2d) 189 (1994) (issue not raised to or ruled upon by trial judge is not properly before Supreme Court on appeal); *State v. Williams*, — S.C. —, 459 S.E. (2d) 519 (Ct. App. 1995) (to warrant appellate consideration of trial court's ruling on nonjurisdictional issue, issue must have first been presented to trial court and trial court must have then ruled on issue); *State v. Barroso*, — S.C. —, 462 S.E. (2d) 862 (Ct. App. 1995)

(defendant's constitutional challenge to statute allegedly denying defendant opportunity to participate in rehabilitation programs was not raised below and, thus, would not be considered on appeal); *Pollard v. County of Florence*, 314 S.C. 397, 444 S.E. (2d) 534 (Ct. App. 1994) (motorist could not argue on appeal that county was estopped from asserting two-year statute of limitations by making payments in partial satisfaction of claim, where motorist did not raise issues to circuit court); *see generally* cases collected in West's South Carolina Digest, *Appeal & Error*, Key Nos. 181-247, and *Criminal Law*, Key Nos. 1028-1068; 4 C.J.S. *Appeal & Error* § 202 (1993); 24 C.J.S. *Criminal Law* § 1682 (1989).

Matters not argued to or ruled on by the trial court are not preserved for review. *Food Mart v. South Carolina Dep't of Health and Envtl. Control*, — S.C. —, 471 S.E. (2d) 688 (1996) (Davis Adv. Sh. No. 13 at 8). *See Hendrix v. Eastern Distribution, Inc.*, — S.C. —, 464 S.E. (2d) 112 (1995) (issue not preserved for review should not have been addressed by Court of Appeals and opinion was vacated to extent it addressed issue that was not preserved); *Grant v. South Carolina Coastal Council*, — S.C. —, 461 S.E. (2d) 388 (1995) (due process claim raised for first time on appeal was not preserved); *Beaufort County v. Butler*, 316 S.C. 465, 451 S.E. (2d) 386 (1994) (issues not raised at merits hearing were not preserved for review); *State v. Sullivan*, 310 S.C. 311, 426 S.E. (2d) 766 (1993) (to preserve an issue for appellate review, appellant must object at the first opportunity); *Cook v. South Carolina Dep't of Highways and Pub. Transp.*, 309 S.C. 179, 420 S.E. (2d) 847 (1992) (issues not timely raised to and ruled upon by trial court will not be addressed on appeal); *Tri-County Ice and Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 399 S.E. (2d) 779 (1990) (claim that was not raised below would not be considered for first time on appeal); *SSI Medical Services, Inc. v. Cox*, 301 S.C. 493, 392 S.E. (2d) 789 (1990) (issue on which trial judge never ruled and which was not raised in posttrial motion was not properly before Supreme Court); *Murphy v. Hagan*, 275 S.C. 334, 271 S.E. (2d) 311 (1980) (appellate court will not hear issues not raised or preserved in lower court proceeding); *Dixon v. Besco Eng'g, Inc.*, — S.C. —, 463 S.E. (2d) 636 (Ct. App. 1995) (issues on which trial judge never ruled and which were not raised in posttrial motion are not

preserved for appeal); *Widewater Square Assocs. v. Opening Break*, 314 S.C. 149, 442 S.E. (2d) 185 (Ct. App. 1994), *aff'd as modified*, — S.C. —, 460 S.E. (2d) 396 (1995) (issue neither raised at trial nor ruled on by trial court presents no question on appeal); *Goddard v. Fairways Dev. Gen. Partnership*, 310 S.C. 408, 426 S.E. (2d) 828 (Ct. App. 1993) (issues on which trial judge never ruled and which were not raised in posttrial motion are not properly before Court of Appeals).

In its final order, the Board failed to set forth the particular standard of proof it applied in reaching its decision. Anonymous timely moved for reconsideration, requesting, among other things, the Board use the clear and convincing standard. As a practical matter, the motion for reconsideration represented Anonymous' first opportunity to raise the issue of the standard of proof to the Board and, at that point, his only option to determine which standard of proof the Board actually employed in making its decision. *State v. Sullivan*, 310 S.C. at 314, 426 S.E. (2d) at 768. The Board, however, denied Anonymous' motion. In denying his motion after having "carefully reviewed" it, the Board effectively denied Anonymous' request to apply the clear and convincing standard. In so doing, the Board effectively denied it used the clear and convincing standard and admitted it applied a lesser standard.

We recognize the rule that a party cannot use a motion to reconsider, alter, or amend a judgment to present an issue that could have been raised prior to the judgment but was not so raised. *Patterson v. Reid*, — S.C. —, 456 S.E. (2d) 436 (Ct. App. 1995); *Anderson Memorial Hosp., Inc. v. Hagen*, 313 S.C. 497, 443 S.E. (2d) 399 (Ct. App. 1994). This, however, is not what happened here.

Anonymous had no duty to request the Board to use the proper standard. He had the right to rely on the presumption of regularity. 73A C.J.S. *Public Administrative Law and Procedure* § 220, at 277 (1983). Anonymous, therefore, could have properly assumed the Board would use the proper standard. When, however, the Board issued its order and did not expressly state which standard of proof, if any, it followed in making its decision and thus presented for the first time a question concerning the standard to be employed, Anonymous rightly raised to the Board in his motion for reconsideration

the question regarding the standard to be used. The Board ruled upon the issue when it denied his motion. We therefore hold Anonymous preserved for appellate review the standard of proof required in a physician disciplinary proceeding.

## PROSPECTIVE OR RETROSPECTIVE APPLICATION

Next, the Board raises the specter of the possibility of the adverse effect on pending cases of a ruling concerning the standard of proof. Anonymous replies that the error preservation rule should be applied to those cases.

We conclude that the application of the error preservation rule to pending cases removes any negativistic impact.

## CONCLUSION

The order of the circuit judge is reversed and the case is remanded to the Board for a hearing *de novo* in which the Board shall apply the clear and convincing standard of proof to all issues. The Board shall be allowed to use the testimony from the prior hearing, notwithstanding the scope of the hearing before the Board is not limited to the evidence previously existing in the record. *Cf. Parker v. South Carolina Pub. Serv. Comm'n,* 288 S.E. 304, 342 S.E. (2d) 403 (1986) (wherein the supreme court held the circuit court erred in sustaining the commission's refusal to limit the scope of the hearing after remand to the evidence previously existing in the record where the commission's actions violated the clear language of the supreme court's decision); *cf. also* Rule 804(b)(1), SCRE (the former testimony exception to the hearsay rule).

In view of our holding in regard to the standard of proof to be applied in this case, we do not reach the substantial evidence issue.

Reversed and remanded.

GOOLSBY and HEARN, JJ., concur.