505 S.E.2d 598

**Virginia OGBURN–MATTHEWS, Appellant,**

v.

**LOBLOLLY PARTNERS (RICEFIELDS SUBDIVISION), and DHEC Office of Ocean and Coastal Resource Management, Respondents.**

No. 2876.

Court of Appeals of South Carolina.

Heard Feb. 4, 1998.
Decided Aug. 3, 1998.

552

James S. Chandler, Jr., Pawleys Island, for appellant.

Douglas L. Hinds, of Hinds, Cowan, Strange, Geer & Lumpkin, Georgetown; and Mary Duncan Shahid, Charleston, for respondents.

HOWARD, Judge:

Virginia Ogburn–Matthews (Matthews) appeals the issuance of a certificate of consistency by the South Carolina Environmental Control Office of Ocean and Coastal Resource Management (the Agency) to fill a 0.38 acre wetland (the Wetland) which adjoins her residence. The special referee affirmed the

certification of consistency issued by the Agency in connection with a federal Nationwide 26 permit application to fill the Wetland. The certificate of consistency enabled the developer, Loblolly Partners (Loblolly), to obtain a Nationwide 26 permit allowing the Wetland to be filled.

## I.  PROCEDURAL HISTORY

The Agency issued its "Notice of Intent" to certify that the filling of the Wetland was consistent with the South Carolina Coastal Zone Management Program (the Program) as a required step in the federal permitting process under 16 U.S.C. § 1456(c)(3)(A) (1985 & Supp.1997). Matthews filed an objection to the "Notice of Intent" before the Agency council. The council adopted the consistency certification recommendation as the final agency action, and Matthews filed this suit to review the decision in circuit court. The action was referred to the special referee with finality. The special referee affirmed the issuance of the certification. Matthews filed a motion for a rehearing and/or amendment of judgment, which the special referee denied. We reverse and remand.

## II.  STATUTORY FRAMEWORK

### A.  Nationwide 26 Permits

The Nationwide 26 permit program is a federal regulatory process for the issuance of permits for a variety of federal activities having environmental impacts. South Carolina adopted the complementary Coastal Zone Management Program which establishes South Carolina's policy on these environmental impacts. The Nationwide 26 permit is issued by the federal government through the Department of the Army, Charleston District Corps of Engineers (the Corps), and is "designed to regulate with little, if any, delay or paperwork certain activities having minimal impacts." 3 C.F.R. § 330.1(b) (1997). Before issuance, the Corps requires the applicant to seek a "consistency determination" from the appropriate state agencies to confirm a project complies with state coastal environmental policies. *See* Coastal Zone Management Act, 16 U.S.C. § 1456 (1985 & Supp.1997). If the state does not act on the permittee's request for consistency certification within six months, concurrence is presumed by

the Corps. 33 C.F.R. § 330.4(d)(6) (1997). If the state agency does not find the candidate project consistent with state policy, the federal government may make an independent determination that "the activity is consistent with the objectives of [the federal Coastal Zone Management Act] or is otherwise necessary in the interest of national security" and issue the Nationwide 26 permit notwithstanding the state's objection. 16 U.S.C. § 1456(c)(3)(A) (1985 & Supp.1997).

## B. The South Carolina Coastal Zone Management Program

The South Carolina legislature authorized the development of the Program which dictates the manner in which the Agency "shall have the authority to review all state and federal permit applications in the coastal zone, and to certify that these do not contravene the management plan." S.C.Code Ann. § 48–39–80(B)(11) (Supp.1997). The consistency determination required for a Nationwide 26 permit represents a statement of assurance by the Agency that a permit candidate's project complies with South Carolina's Program for coastal zone management. § 48–39–80.

The Program requires that, to obtain a consistency determination, an applicant must submit the proposed activity plans to the Agency. The Agency then assesses the application and, upon determining that it is consistent with the Program, issues a proposed determination of consistency. The Agency is then required to provide public notice of the proposed certification and to review the objections to the certification that are submitted. *See* 1993 Coastal Zone Management Program Final Refinements p. 18–19. The Agency's decision to issue a consistency certification despite objections is also subject to review. These review procedures were adopted in the Program refinements in 1993. These refinements provide as follows:

a) The decision of the staff or Management Committee shall be deemed a final agency decision in the matter unless three members of the full Council request in writing that oral arguments be had before the full Council.

b) If three members of the full Council make written demand for oral arguments, then oral arguments shall be

heard after the ten day comment period by the full Council. Upon review of the decision by the full Council, the written order of the Council affirming, reversing or modifying the decision shall be deemed the final agency action in this matter.

1993 Coastal Zone Management Program Final Refinements p. 20. Matthews attacks this review procedure as constitutionally defective.

## III. FACTS

### A. Administrative Action

Loblolly is the developer of Ricefields Subdivision, located in Georgetown County, South Carolina. In 1994, Loblolly applied to the Corps for a Nationwide 26 permit to fill the Wetland. The Corps issued a letter stating the project would be a candidate for authorization if the Agency certified the activity would be consistent with the Program and a mitigation proposal acceptable to the Agency was submitted and approved by the Corps.

An Agency biologist conducted an environmental review of the project, concluding the Wetland was contiguous with Ricefields Lake and was a permanently flooded, forested wetland. His recommendation was to deny certification of consistency with the Program.

Loblolly submitted a revised application to the Corps on May 3, 1995, which contained a wetland master plan to minimize wetland impacts. By then the development had grown to 286 lots in eight phases on approximately 171 acres of land. Loblolly proposed to place the mitigation provisions in a recorded deed restriction. A second Agency environmental review was conducted on May 16, 1995. Again, the reviewing biologist concluded the Wetland was contiguous with Ricefields Lake, was seasonally flooded, and filling it was inconsistent with the Program.

On May 23, 1995, the Agency received a letter from the South Carolina Department of Natural Resources offering no objection to the project as long as 35′ upland buffers were established adjacent to all project wetlands and restrictive covenants were placed on all set-aside wetlands and buffer

areas.  A third environmental review was then performed on June 6, 1995.  The complete report consisted of only the following:

"Certify permit.  Deed—OCRM/COE approved—restriction must be recorded within 60 days." [1]

That same day the Agency issued a "Notice of Intent" to find the project consistent with the Program.  "Interested parties" were provided ten days to file an objection.

Matthews filed an objection with supporting information on several grounds, including that the Wetland is not isolated, and is therefore excluded from the "isolated wetlands" portion of the pre-development wetland master planning policy.

Matthews' appeal and Loblolly's response were transmitted to the Agency-council members, sitting as the review board, in compliance with the 1993 Coastal Zone Management Program Refinements.  No request was made for oral argument by three or more members of the council, and in default thereof, the staff recommendation was affirmed as the final agency action.

## B.  Judicial Review

Matthews filed a complaint with the circuit court seeking review under S.C.Code Ann. § 1–23–380 (Supp.1997) of the Administrative Procedures Act (the APA) or, in the alternative, upon writ of certiorari.  In her complaint, Matthews cited the same grounds as in her objection, but added that the Agency's review procedure denied her due process of law.

The special referee reviewed the appeal on a writ of certiorari, concluding there was evidence to support the decision to certify that the project was consistent, and to support the specific finding that the Wetland was isolated.  The referee also concluded the Agency's review procedure complied with

---

1.  The director of the Agency, H. Stephen Snyder, signed an affidavit stating that Gene Euchler, the biologist who conducted the first two environmental reviews, works for the Permitting Division of the Agency and "provides field assistance under loan to the [Coastal Zone Management] Division from time to time."  Euchler compiles information for review by Jeff Thompson, Senior Wetland Biologist, who makes a recommendation to Rob Mikell, Director of Planning and Federal Certification, "who is responsible for the decision to issue or deny consistency."

minimum standards of due process and the Agency had applied its policies correctly.

Matthews moved for a rehearing and/or amendment of judgment, which was denied.

## IV. ISSUES PRESENTED:

A. **Was Matthews afforded due process of law by the Agency's review procedure?**

  1. **Do minimum standards of due process require a procedural step by which council members affirmatively respond to a contestant's objection before finalizing agency action, in order to assure they have received and considered a contestant's position?**

  2. **Does due process require that a contestant objecting to consistency certification by the Agency in connection with a Nationwide 26 permit application be afforded a trial-type, adversarial hearing, with an opportunity to confront and cross-examine witnesses?**

B. **Is a Program consistency administrative review proceeding a "contested case" falling under the APA?**

C. **Did the special referee err in affirming the Agency's consistency certification where the administrative record contains no evidence that Loblolly's project complies with the Program?**

## V. DISCUSSION/ANALYSIS

### A. Due Process

According to Matthews, the Agency's review procedure adopted by the 1993 Program refinements does not comply with minimum standards of due process because the procedure does not afford the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Specifically, Matthews argues the procedure for review of the staff or management committee recommendation provides no mechanism to assure the council has received or reviewed

written submissions because the staff recommendation becomes a final Agency position in default of council action. She also maintains an adjudicatory hearing was required to resolve questions of fact raised by unsworn documents in the administrative record.

1. **Do minimum standards of due process require a procedural step by which council members affirmatively respond to a contestant's objection before finalizing agency action, in order to assure they have received and considered a contestant's position?**

Under the Agency's consistency certification review process, written materials are submitted by contestants and forwarded by the Agency to the members of the Agency council, who are acting as the review board. If there is no request for oral argument within ten days from at least three council members, the staff or management committee recommendation becomes the final Agency decision, confirmed by a written order of the council.

Matthews points out that there is no procedural step requiring action by council members to affirm a staff or committee action. Thus, there is no mechanism by which a contestant can verify that the council members have considered the submitted materials, or have even received them. Essentially, then, Matthews first argues due process requires, at a minimum, that the procedure provide an objective mechanism to assure administrative officials have considered her position.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Stono River Envtl. Protection Ass'n v. South Carolina Dep't of Health and Envtl. Control*, 305 S.C. 90, 94, 406 S.E.2d 340, 341 (1991) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). To prove the denial of due process in an administrative proceeding, a party must show that it was substantially prejudiced by the administrative process. *Palmetto Alliance, Inc. v. South Carolina Public Service Comm'n*, 282 S.C. 430, 319 S.E.2d 695 (1984) (citing *Ka Fung Chan v. Immigration and Naturalization Serv.*, 634 F.2d 248 (5th Cir.1981)).

■■■ An administrative board must follow its own rules and regulations. *Triska v. Department of Health and Envtl. Control,* 292 S.C. 190, 355 S.E.2d 531 (1987). However,

> An administrative agency's failure to follow its own rules and regulations does not create a constitutional due process right on behalf of a party who suffers some wrong at the hands of the administrative body. *See Board of Curators v. Horowitz,* 435 U.S. 78, 92, 98 S.Ct. 948, 956, 55 L.Ed.2d 124, 136 (1978). Rather, the obligation of such a body to follow its own rules and regulations is founded in principles of administrative law. B. Schwartz, Administrative Law § 5.2 at 204 (2d ed. 1984).

*Tiffany v. Arizona Interscholastic Ass'n, Inc.,* 151 Ariz. 134, 726 P.2d 231, 236 (Ct.App.1986).

■■ The requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review. S.C. Const. art. 1, § 22; *Stono River Envtl. Protection Ass'n v. South Carolina Dep't of Health and Envtl. Control,* 305 S.C. 90, 406 S.E.2d 340 (1991). Judicial review assures a determination that the agency action has a factual basis. *See South Carolina Wildlife Fed'n v. South Carolina Coastal Council,* 296 S.C. 187, 371 S.E.2d 521 (1988). "At a minimum, there must be some tenable connection between the facts and the governmental action." Robert L. Rabin, *Some Thoughts on the Relationship Between Fundamental Values and Procedural Safeguards in Constitutional Right to Hearing Cases,* 16 San Diego L.Rev. 301, 302–03 (1979). These fundamental requirements have been clearly mandated by our Constitution and our supreme court to comport with due process. S.C. Const. art. 1, § 22; *Stono River Envtl. Protection Ass'n v. South Carolina Dep't of Health and Envtl. Control,* 305 S.C. 90, 406 S.E.2d 340 (1991).

■ "Due process encompasses all rights which are of such fundamental importance as to require compliance with due process standards of fairness and justice and includes procedural ... rights of citizens against government actions that threaten the denial of life, liberty, or property." *Anonymous v. State Bd. of Med. Exam'rs,* 323 S.C. 260, 264, 473 S.E.2d 870, 872 (Ct.App.1996), *rev'd on other grounds,* 329 S.C. 371, 496 S.E.2d 17 (1998). But Matthews does not identify, nor do

we detect, any fundamental right at stake which can *only* be protected by imposing an additional procedure to verify that a contestant's arguments have actually been reviewed and considered.

Requiring affirmative action by the Agency council might provide objective assurance of some handling, but it is not a necessary procedure for determining that an agency's actions are based in reason, and have a tenable connection to the facts. Indeed, it would not assure, to any degree, the quality of agency review. Conversely, agency accountability is assured by requiring a judicial review to determine that its decision has a foundation in law and fact. Therefore, the failure to implement a procedure requiring affirmative action by the council to finalize the Agency's decision does not offend due process, absent a showing of substantial prejudice.

Matthews presented no evidence to indicate the council did not perform its function. *See Ross v. Medical Univ. of South Carolina,* 317 S.C. 377, 381, 453 S.E.2d 880, 883 (1994) ("In the case of an allegation of irregularity not apparent on the record the trial court may, in its discretion, also permit additional evidence to be presented.... Furthermore, a reviewing court has the duty to examine the procedural methods employed at an administrative hearing to ensure that a fair and impartial procedure was used."). Thus, there is no factual basis for the assertion that she was substantially prejudiced by the procedure in this case.

We conclude the "default" procedure for final agency action did not offend due process, and Matthews has not established that she suffered substantial prejudice. Accordingly, we find no due process violation in the Agency's review process.

**2. Does due process require that a contestant objecting to consistency certification by the Agency in connection with a Nationwide 26 permit application be afforded a trial-type, adversarial hearing, with an opportunity to confront and cross-examine witnesses?**

██ Matthews' second assertion is that she was denied a meaningful opportunity to be heard because she was not provided an adversarial hearing at which she could make an

oral presentation, with confrontation and cross-examination of witnesses.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court articulated three identifiable factors for assessing the constitutional requirements of due process. These are:

First, the private interest that will be affected by the official action;

[S]econd, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

[F]inally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334, 96 S.Ct. 893; *see also Anonymous v. State Bd. of Med. Exam'rs*, 323 S.C. 260, 264, 473 S.E.2d 870, 873 (Ct.App. 1996) ("[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), *rev'd on other grounds*, 329 S.C. 371, 496 S.E.2d 17 (1998); *South Carolina Dep't of Soc. Servs. v. Holden*, 319 S.C. 72, 459 S.E.2d 846 (1995); *First Federal Sav. and Loan Ass'n v. Board of Bank Control*, 263 S.C. 59, 65, 207 S.E.2d 801, 804 (1974) ("It is recognized that due process 'does not require a trial-type hearing in every conceivable case of government impairment of private interest;' and 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' ") (quoting *Cafeteria and Restaurant Workers Union Local 473 v. McElroy*, 367 U.S. 886, 894–95, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)).

The Agency is acting in a quasi-judicial capacity when fulfilling its role in this administrative setting. *Stono River Envtl. Protection Ass'n v. South Carolina Dep't of Health and*

*Envtl. Control,* 305 S.C. 90, 406 S.E.2d 340 (1991). Clearly, contestants are entitled to an opportunity to be heard by the Agency; that is, to submit their position and their comments for consideration by the Agency, with opportunity to respond to opposing views before a final determination is made.

This, in turn, requires notice that the Agency action is pending and access to the information which has been submitted to the Agency for review. *Id.;* S.C. Const. art. 1, § 22. Notice was provided in this case, and its sufficiency is uncontested. The procedure allows a contestant an opportunity to respond in writing to the Agency's proposed action before a final decision is reached, with no stated restriction on the amount or type of supporting information which may be included. Written argument in support of a contestant's position may be included, along with response to the application and its supporting documentation. All of this is undeniable, as Matthews availed herself of this response.

The question remains: Does due process mandate a trial-type hearing, with confrontation and opportunity for cross examination of witnesses? Other courts have answered no, and we join with them in this determination.

The first consideration under *Mathews* is the private interest that will be affected by the official action. Matthews claims an individual injury in the adverse effect of this specific decision of the Agency on her use and enjoyment of the Wetland, which lies adjacent to her residence. Our supreme court has found this interest to be sufficient to provide standing. *South Carolina Wildlife Fed'n v. South Carolina Coastal Council,* 296 S.C. 187, 371 S.E.2d 521 (1988).

"[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process." *Mathews v. Eldridge,* 424 U.S. 319, 341, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also First Fed. Sav. and Loan Ass'n v. Board of Bank Control,* 263 S.C. 59, 207 S.E.2d 801 (1974). Matthews is not the owner of the Wetland. She has no economic interest which is directly affected by the issuance of a consistency certificate. Matthews' individual interest is her enjoyment of the wildlife and habitat. What may be

perceived as another interest, her concern with assuring the Agency fulfills its governmental obligation to carry out the state's policy regarding property in the coastal zone, is not a property interest recognized as sufficiently individual to provide standing. *See Energy Research Found. v. Waddell,* 295 S.C. 100, 367 S.E.2d 419 (1988); *but cf. First Fed. Sav. and Loan Ass'n v. Board of Bank Control,* 263 S.C. 59, 207 S.E.2d 801 (1974) (although established bank has no right to be free from competition, it does have a right to be free from illegal competition, and thus has a sufficient interest in administrative proceeding approving new bank to assure through certiorari judicial review that administrative decision to approve new bank complies with banking regulations).

It must be remembered that the Nationwide 26 permit is designed to administratively regulate action having "minimal impact." 33 C.F.R. § 330.1(b) (1997). Significantly, the South Carolina policy under which consistency is sought is limited to isolated wetlands of less than one acre. The potential for individual deprivation to Matthews, having no possessory right of access to the Wetland, is likely to be less significant than that of the owner of the affected property. Yet, even when the analysis has involved the property interest of the owner, federal decisions in analogous settings have determined that a trial-type hearing is not required in the actual permitting process. *See Shoreline Assocs. v. Marsh,* 555 F.Supp. 169 (D.Md.1983), *aff'd,* 725 F.2d 677 (4th Cir.1984); *see also Taylor v. District Engineer, U.S. Army Corps of Engineers,* 567 F.2d 1332 (5th Cir.1978); *but see United States Steel Corp. v. Train,* 556 F.2d 822 (7th Cir.1977).

The second consideration is the evaluation of the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards. When considering this issue, the Supreme Court has recognized that a scientifically based inquiry is less apt to be adversely impacted by an informal process. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Shoreline Assocs. v. Marsh,* 555 F.Supp. 169 (D.Md.1983), *aff'd,* 725 F.2d 677 (4th Cir.1984).

As recognized in *Mathews,* "[c]entral to the evaluation of any administrative process is the nature of the relevant inqui-

ry." *Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews*, the inquiry was the entitlement to the continuation of Social Security disability benefits. The Court noted that the pre-termination agency decision to suspend disability payments turned, in most cases, upon the "routine, standard, and unbiased medical reports by physician specialists." *Id.* at 343, 96 S.Ct. 893 (quoting *Richardson v. Perales*, 402 U.S. 389, 404, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Even though there may be some professional disagreement with the medical conclusions, the Court noted:

> [T]he specter of questionable credibility and veracity is not present. To be sure, credibility and veracity may be a factor in the ultimate disability assessment in some cases. But procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions.

*Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted).

The *Mathews* Court also noted that the information essential to a decision was of a technical nature, communicated by professionals, who were generally capable of effective written presentation of their positions. Thus, "[t]he value of an evidentiary hearing, or even a limited oral presentation, to an accurate presentation of those factors to the decisionmaker does not appear substantial." *Id.* at 345, n. 28, 96 S.Ct. 893.

We think these characteristics also describe a state application for certification of consistency in a Nationwide 26 permit application. The consistency application in this case centered around the filling of a 0.38 acre wetland, based upon technical criteria which measure the impact of that action on the surrounding ecology. The Wetland's physical location, size and proximity to Ricefields Lake and other waters or tributaries are matters largely determinable by accurate surveys and site inspection by expert biologists. The same is true of the proposed master plan for wetland mitigation. The inquiry to determine whether the action is consistent or inconsistent with the Program is almost exclusively a technical one. The relative gain by allowing cross-examination of surveyors or biologists is, in our opinion, analogous to that of a medical profes-

sional in the context of a social security disability case. It does not appear to be substantial.

As to the personal impact on the individual contestant of the filling of the Wetland, to the extent it is based on ecological concerns, that also is largely a technical or scientific inquiry. To the extent it is based on other, individual concerns, the inquiry does not target a segment of society which is disproportionately incapable of presenting effective written communication, as, for example, in the termination of welfare benefits. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Matthews provided the Agency with her views in written form, which she accomplished without any obvious difficulty of expression.

The third consideration in "striking the appropriate due process balance" is assessment of the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 347, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It is important to note that we do not have a developed record which would allow an in-depth cost analysis of this issue. Several general observations, however, lend support for the conclusion that the governmental interest significantly weighs against requiring a more formal, adversarial hearing.

We again note that, although our supreme court, in *Stono River,* stated the process of certification by the Agency is the only meaningful opportunity for an interested person to be heard on the issue of consistency of a proposed project with state policy, the final permitting authority is the Corps, irrespective of consistency. *Stono River Envtl. Protection Ass'n v. South Carolina Dep't of Health and Envtl. Control,* 305 S.C. 90, 406 S.E.2d 340 (1991). In other words, the Agency action is somewhat less critical than the actual permitting itself. *See Anton v. South Carolina Coastal Council,* 321 S.C. 481, 469 S.E.2d 604 (1996) (Only when a federal permit is denied does a "taking" occur in any sense. Thus, no cause of action arises for inverse condemnation following a denial of consistency certification.). We also again reference the fact that Nationwide 26 permits are "a type of general permit issued by the Chief of Engineers and are designed to regulate with little, if

any, delay or paperwork certain activities having minimal impacts." 3 C.F.R. § 330.1(b) (1997).

The special referee found the Agency conducts approximately 2000 consistency reviews each year, and employs fifteen people for this responsibility. This finding is unappealed, and equates to an average of over 38 reviews per week. We cannot accurately determine from this statistic the number of contested hearings which might be requested. But, with little fear of contradiction, we conclude that the formalization of the review process to include an adversarial hearing suggests a significantly increased administrative burden.

As noted previously, the foundation of the decision making process is provided by the expert field inspection and analysis of Agency biologists.[2] To complete present duties, the Agency already "borrows" a biologist from another department. Given the nature of the inquiry, it is not difficult to comprehend that there would be significant time demands placed upon this essential resource by adding testimonial presentation in an adversarial, trial-type hearing to the decisional process. This is especially true, given the Nationwide 26 permit requirement that the Agency act within six months, or consistency will be presumed. As the Supreme Court observed, "[E]xperience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial." *Mathews v. Eldridge*, 424 U.S. 319, 347, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Having evaluated the process employed by the Agency in light of the relevant criteria, we conclude that the procedures in place provide an effective way of allowing a meaningful opportunity to be heard. An evidentiary hearing is not required to comport with due process, nor is the contestant entitled to a trial-type hearing where evidence is presented under oath, and witnesses are confronted and subjected to cross-examination before a consistency certification may be issued.

---

**2.** *See* footnote 1.

**B. Is a Program consistency administrative review proceeding a "contested case" falling under the APA?**

Matthews next raises the parallel question of whether the consistency certification is governed by the APA, in which event the decision must be supported by "substantial evidence." *See* S.C.Code Ann. § 1–23–380 (Supp.1997). The APA further mandates that an adjudicatory hearing be afforded in contested cases and that final decisions in contested cases include specific findings of fact and conclusions of law. S.C.Code Ann. § 1–23–320, 380 (Supp.1997).

The APA defines a "contested case" as

a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing.

S.C.Code Ann. § 1–23–310(2) (Supp.1997).

In *Triska*, our supreme court held that the state issuance of a 401 Water Quality Certification was not a "contested case" under the statutory law as it existed at that time. *Triska v. Department of Health and Envtl. Control*, 292 S.C. 190, 355 S.E.2d 531 (1987). A subsequently decided case modified the holding of *Triska*, affirming the finding that a 401 certification was not a "contested case." *Stono River Envtl. Protection Ass'n v. South Carolina Dep't of Health and Envtl. Control*, 305 S.C. 90, 406 S.E.2d 340 (1991). However, the court remanded the case noting that "all Administrative agencies are required to meet minimum standards of due process" and that "[u]nder the circumstances of this case, we conclude that the parties were entitled to notice and the opportunity to be heard." *Id.* at 93–94, 406 S.E.2d at 341.

The court did not discuss what effect, if any, the requirement that the agency confer an "opportunity to be heard" has on the issue of whether the certification was a "contested case." However, immediately after the cause of action accrued in *Stono River,* our General Assembly adopted regulations which mandate a hearing procedure in 401 certification cases and deem the hearing procedure a "contested case." 25A S.C.Code Ann. Regs. 61–101 (Supp.1997).

Most recently, in *League of Women Voters v. Litchfield–by–the–Sea*, 305 S.C. 424, 409 S.E.2d 378 (1991), our supreme court held that the South Carolina Coastal Council's certification under the Program of a state-issued permit was not a "contested case." However, relying on *Stono River*, the supreme court recognized the parties' right to notice and the opportunity to be heard prior to issuance of certification.

There is no South Carolina case which directly decides whether or not the Agency's review procedure, providing an opportunity to be heard, constitutes a statutory or regulatory hearing *required by law*, which makes the process a "contested case." The decision in *League of Women Voters* seems to suggest that it is not. *Id.* The court held that a consistency determination was not a "contested case" because there was no requirement imposed by statute or regulation for a *hearing*, but nevertheless, the court required an *opportunity to be heard* to comply with due process. In any event, we need not decide the issue in this case, because even under the "any evidence" writ of certiorari standard of review, the decision must be reversed.

**C. Did the Special Referee err in affirming the Agency's consistency certification where the administrative record contains no evidence that Loblolly's project complies with the Program?**

When applying a writ of certiorari review, the court of appeals will confine its review to the correction of errors of law only and will not review the findings of fact of an inferior court or body except when such findings are wholly unsupported by the evidence. *Wall v. South Carolina Alcoholic Beverage Control Comm'n*, 269 S.C. 13, 235 S.E.2d 806 (1977). The question, therefore, is whether the decision of the Agency was supported by any evidence. *Id.* We conclude there is no evidence which supports a finding that the project proposed by Loblolly is consistent with the Program. *See South Carolina Wildlife Fed'n v. South Carolina Coastal Council*, 296 S.C. 187, 371 S.E.2d 521 (1988).

Certification must be based on the Agency's determination that the proposed-project is consistent with the policies of the Program. The relevant policies in the Program are those

concerning the filling of *isolated* wetlands. Only if a wetland is "isolated" does the policy apply. The policy provides as follows:

> The Coastal Council encourages a comprehensive approach to wetland management. To promote such an approach, the Council utilizes a "wetland master planning" concept.
>
> If a pre-development wetland master plan is prepared for a project, identifying all wetlands, drainage patterns and conceptual development, *isolated freshwater wetlands* of one (1) acre or less in total size may be incorporated into the project development without restrictions provided:
>
> 1. The wetlands contain no endangered species or critical habitat, and;
>
> 2. The wetland losses are adequately mitigated.

1993 Coastal Zone Management Program Final Refinements p. III–73 (emphasis added).

■ A thorough review of this record reveals that no evidence supports the Agency's finding that the project proposed by Loblolly involved an "isolated" wetland. The Program does not define the term "isolated wetland." But if a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). "Isolated" is defined as "placed alone or apart: being alone: solitary...." *Webster's Third New International Dictionary* 1199 (1986). Therefore, if the Wetland in question is contiguous with Ricefields Lake, with seasonal flooding, as found in the May 16, 1995 environmental review, the Wetland cannot be considered "isolated" under the Program.

Initially, Loblolly relies upon the June 6, 1995 environmental review as evidence that the Wetland is isolated. However, this environmental review states only to "certify permit," without explanation. In contrast, the Agency's environmental review conducted one month before concludes that the Wetland was not isolated, and provides an explanation of the finding, stating: "The 0.38 wetland in Phase 5 is *contiguous* with Ricefields Lake." This description of the property and

the initial review at the time of the 1994 application, both of which describe the Wetland as contiguous to Ricefields Lake, are the only evidence as to the contiguity of the Wetland to Ricefields Lake appearing in the record.

Conversely, the proposed Agency action to certify the permit contains no factual explanation. Inferring the underlying factual basis from the conclusion, as argued by the Agency, makes judicial review meaningless. To so conclude would be pure speculation. *See Smith v. Pratt,* 258 S.C. 504, 189 S.E.2d 301 (1972) (holding no competent evidence existed to support finding under writ of certiorari review).

Loblolly next argues 1) the Department of the Army Public Notice states that the project is "a candidate for authorization," and this indicates a prior determination by the Corps that the project involves "isolated" wetlands; 2) the evidence supplied by Loblolly to support its application for a permit includes a wetland delineation number; 3) a wetland survey and project map show the Wetland as an "isolated" entity; 4) Loblolly's project description describes the Wetland as "isolated wetlands"; and 5) Matthews, in her brief contesting the Agency's certification, described the Wetland, saying that "a man-made dike separates this wetland from the open water lake." A close evaluation of these claims, however, does not reveal evidence that supports a conclusion that the Wetland is, in fact, "isolated."

First, we find nothing in the Nationwide 26 permit regulations stating that a candidate for a federal permit must satisfy the Code of Federal Regulations' definition of "isolated wetlands" *prior* to a request for state consistency determination. *See* 33 C.F.R. § 330.2 (1997). Thus, even assuming the federal definition of "isolated wetland" encompasses the Program's definition, there is no evidence the Wetland had met the relevant criteria at the time of the consistency application.

As to the second argument, the fact that Loblolly's application includes a wetland delineation number does not support the conclusion that the Wetland is an "isolated" wetland. Nowhere in the record is there evidence of what entity provided a wetland delineation or what the delineation entailed.

As to the third argument, the Wetland survey and project maps submitted by Loblolly do not support the conclusion that the Wetland is "isolated." Neither of the maps relied on by Loblolly fully depicts the area clearly enough to determine the Wetland's spatial relationship to Ricefields Lake. Further, Loblolly's description of the Wetland as "isolated" on the application materials is not evidence of its proximity to Ricefields Lake, but is an assertion unsupported by any foundation in the record or in the application itself.

We disagree with the Loblolly's characterization of Matthews' statement in her brief. Following is Matthews' statement, in context:

The wetland at issue in this case is one of the small areas of the larger system that is still forested. A man-made dike separates this wetland from the open water lake. *However, there is still a surface water connection with the lake during wet periods.*

(emphasis added). Taken in context, Matthews clearly asserts that the Wetland is not "isolated."

Finally, our conclusion is the same applying the Nationwide 26 permit definition of "isolated wetland." Where the legislature elects not to define a term in a statute, the courts will interpret the term in accord with its usual and customary meaning. *Adoptive Parents v. Biological Parents,* 315 S.C. 535, 446 S.E.2d 404 (1994). In construing a statute, a court may consider legislation which deals with the same subject matter. *Id.* The interpretation of a term set forth in a statute should support the statute and should not lead to an absurd result. *South Carolina Coastal Council v. South Carolina State Ethics Comm'n,* 306 S.C. 41, 410 S.E.2d 245 (1991). The federal definition of "isolated wetland" is found in 33 C.F.R. § 330.2:

*Isolated waters* [including wetlands] means those non-tidal waters of the United States that are:

(1) Not a part of a surface tributary system to interstate or navigable waters of the United States; and

(2) Not adjacent to such tributary waterbodies.

33 C.F.R. § 330.2 (1997). No evidence in the record suggests that Ricefields Lake is or is not a tributary waterbody and that, therefore, the Wetland is not adjacent to a tributary

waterbody. Accordingly, the evidence in the record does not support the interpretation that the Wetland is "isolated" within the meaning of the federal regulatory definition.

Based on the foregoing conclusions, we

**REVERSE and REMAND** to the Circuit Court, with instructions to remand to the Agency for further proceedings consistent with this opinion.

HOWELL, C.J., and CURETON, J., concur.