546 S.E.2d 195

**William T. BROWN, III, Appellant,**

v.

**Amy MALLOY, James F. Thompson, d/b/a Thompson & Sinclair, and John and Jane Doe, of whom Amy Malloy and Jane and John Doe are, Respondents.**

No. 3339.

Court of Appeals of South Carolina.

Heard Feb. 6, 2001.

Decided April 30, 2001.

---

**4.** In light of our disposition, we decline to address Latham's remaining argument.

114

Dianne S. Riley, of Greenville, for appellant.

Edgar H. Long, of Long & Smith, of Anderson;  J. Franklin McClain, of Glenn, Haigler, Maddox & McClain, of Anderson;

and Susan B. Lipscomb, of Nexsen, Pruet, Jacobs & Pollard, of Columbia, all for respondents.

HOWARD, Judge:

William T. Brown III brought this suit against Amy Malloy, James F. Thompson, Thompson & Sinclair, and John and Jane Doe (collectively, "Respondents") to set aside the order terminating his parental rights and granting the adoption of his daughter by John and Jane Doe ("the adoptive parents"). Brown asserts, among other things, that he was not provided adequate notice of the proceedings through publication of a "John Doe" Notice of Adoption. The family court determined the Order of Publication in the adoption proceeding was not procured by fraud or collusion, and the affidavit in support of the order was not defective on its face. Based upon this conclusion, the court upheld the adoption. Brown appeals, asserting the family court erred in its factual determinations and in limiting the scope of the hearing to the issue of whether the Order of Publication was procured by fraud or collusion, or was based upon a facially defective affidavit. We affirm in part, reverse in part, and remand for further proceedings.

## *FACTS/PROCEDURAL HISTORY*

Brown is a resident of Orange County, California. In 1997, Brown and Malloy were employed at a chain restaurant in Los Angeles County, California. They began an intimate relationship in June 1997 and for a short time lived together in Brown's residence. During her stay, Malloy became pregnant with Brown's child and advised him of this fact. She then left Brown's residence and resumed living with her fiancé in Los Angeles County in August or September 1997. Malloy returned to her parents' South Carolina residence in January 1998 and began working at another restaurant in the same chain.

A daughter was born to Malloy on March 11, 1998. Two days later, Malloy relinquished her parental rights and consented to the adoption of the child. She signed an affidavit in which she refused to name the father but stated that he resided in Los Angeles County, California. Malloy averred that the biological father had neither openly held himself out

to be the father of the child nor offered support for the child during the six months preceding her birth.

Brown claims he was unable to locate Malloy until June 1998, at which time she led him to believe their daughter lived with her. She sent him pictures of the child and requested $1,000 for child support. Brown sent Malloy $400.

In the meantime, unbeknownst to Brown, the adoptive parents had filed adoption proceedings on April 13, 1998. By order dated April 17, 1998, the family court directed that service on the father be accomplished by publication of the notice of adoption proceedings in a newspaper of general circulation in Los Angeles County. The notice referred to all parties only by fictitious names. Brown did not appear at the hearing to defend. On August 13, 1998, the family court terminated the parental rights of the biological parents and approved the adoption of the child.

Brown learned of the adoption in January 1999 and filed this action to set the adoption aside, claiming that he had not been properly served. The family court ultimately held a hearing on October 19,1999, but limited its inquiry to the validity of the Order of Publication. The court allowed limited testimony from both Malloy and Brown to determine if the Order of Publication was procured by fraud, or whether the affidavit in support of the order was facially defective. By order dated January 11, 2000, the family court ruled the Order of Publication was neither procured by fraud nor based upon a facially defective affidavit. It further ruled the resulting notice was adequate to satisfy statutory requirements. *See* S.C.Code Ann. § 20–7–1734 (Supp.2000).

On April 4, 2000, the court denied Brown's motion to alter or amend the January 11, 2000 order. This appeal followed.

## *ISSUES PRESENTED*

I. Did the family court err in finding that the Order of Publication was not procured through fraud or collusion or based upon a facially defective affidavit?

II. Did the family court err by limiting the scope of the October 19, 1999 hearing to the validity of the Order of Publication?

III. Did the notice of adoption comport with due process?

IV. Did the notice of adoption comply with section 15–9–740 and the requirements of the Order of Publication?

*LAW/ANALYSIS*

In an appeal from the family court, an appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Mazzone v. Miles,* 341 S.C. 203, 207, 532 S.E.2d 890, 892 (Ct.App.2000). However, this broad scope of review does not require this Court to disregard the family court's findings. *Id.* "Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Id.*

**I. Fraud or Collusion**

Brown argues the family court erred by finding the Order of Publication was not based upon a facially defective affidavit or procured by fraud or collusion. We disagree.

Generally, absent fraud or collusion, once the issuing officer is satisfied with the supporting affidavit, the decision to order service by publication is final unless the order of publication is premised upon a facially defective affidavit. *Wachovia Bank of S.C. v. Player,* 334 S.C. 200, 204, 512 S.E.2d 129, 131 (Ct.App.1999), *rev'd on other grounds,* 341 S.C. 424, 535 S.E.2d 128 (2000); *Yarbrough v. Collins,* 293 S.C. 290, 292, 360 S.E.2d 300, 301 (1987); *Montgomery v. Mullins,* 325 S.C. 500, 506, 480 S.E.2d 467, 470 (Ct.App.1997); *Miles v. Lee,* 319 S.C. 271, 274, 460 S.E.2d 423, 425 (Ct.App.1995).

Brown contends Malloy made fraudulent statements in her affidavit by designating Los Angeles County as the place of his residence and the child's conception and by claiming that Brown did not hold himself out as the father of the child.

The testimony reflects that Orange and Los Angeles counties are adjacent. Seal Beach, where Brown resides, is near the county line. Malloy testified that Brown's residence was only ten minutes from where they both worked in Los Angeles County and that she never realized it was in a different

county. Brown admitted Malloy worked with him in Los Angeles County and that she resided in Los Angeles County both before and after staying in his home.

The family court concluded Malloy did not intentionally misrepresent the location of the child's conception and Brown's residence. The court reasoned that if Malloy had intended to deceive Brown and the court she would have named a place far away from Brown's location.

We conclude this decision is heavily dependant upon credibility. The family court saw the witnesses, heard the testimony delivered from the stand, and "had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character." *Lee v. Lee,* 237 S.C. 532, 535, 118 S.E.2d 171, 172–73 (1961). Therefore, we defer to the family court's determination of credibility and conclude that evidence in the record amply supports this conclusion.

The family court also determined Malloy did not intentionally misrepresent Brown's failure to accept parental responsibility for the child. Malloy stated in her affidavit that Brown did not provide support or hold himself out as the father of the child. She testified Brown told her she could remain in his residence, but she voluntarily chose to leave. Brown confirmed in his testimony that he made no other attempts to provide support for Malloy during her pregnancy. According to Brown's testimony, he considered it too early to buy anything for the child. The only amount he provided to Malloy was $400 four months after she signed the affidavit in question. Although Malloy acknowledged Brown told some of their co-workers about her pregnancy, she did not consider his behavior to rise to the level of holding himself out to be the father.

The family court determined Malloy's statements were not intentional misrepresentations, and, again deferring to the family court's determination of credibility, we concur in this finding. However, it is important to note that the court's determination is limited to the conclusion that Malloy's statements were not intentional misrepresentations amounting to fraud which undermined the validity of the Order of Publica-

tion. The court did not reach a conclusion that Malloy's representations were true.

Having determined that the Order of Publication was not procured through fraud or collusion or premised on a facially defective affidavit, we cannot look beyond the decision to order service by publication. *See Wachovia Bank of S.C. v. Player*, 341 S.C. 424, 428–29, 535 S.E.2d 128, 130 (2000).

## II. Scope of October 19, 1999 Hearing

Brown next asserts the family court erred in limiting the scope of the October 19, 1999 hearing to the issue of the validity of the Order of Publication. Brown contends that Malloy's statements in the affidavit are false and that he offered support and intended to assume his parental responsibilities for his child. He argues that his consent to the adoption was required because he assumed parental responsibilities as outlined in section 20–7–1690 and that to the extent his actions fell short of the literal requirements of section 20–7–1690, it was a result of Malloy's deception. *See* S.C.Code Ann. § 20–7–1690 (Supp.2000).

The sufficiency of the blind "John Doe" notice is premised upon the assumption that Brown's parental rights did not attach pursuant to section 20–7–1690 and that he was not entitled to full constitutional protection under the Due Process Clause. *Evans v. S.C. Dep't of Soc. Servs.*, 303 S.C. 108, 111, 399 S.E.2d 156, 157–58 (1990) ("The mere existence of a biological link does not merit constitutional protection of due process rights. An unwed father must accept the responsibilities of parenthood before he acquires this constitutional protection." (citation omitted)). Therefore, Brown argues he was entitled to a hearing to determine the sufficiency of the notice.

Although we may not examine the propriety of the issuance of the Order of Publication, whether the information contained in a notice by publication is sufficient to meet the requirements of due process is an issue separate and distinct from the validity of the order allowing service by publication. *See Montgomery*, 325 S.C. at 506, 480 S.E.2d at 470 (distinguishing between attack on the issuance of the order of publication and attack on whether the publication took place within a reasonable period of time, which was allowed); *see*

*also Wachovia,* 341 S.C. at 428–29, 535 S.E.2d at 130 (ruling separately upon due process issue after determining order of publication was not procured by fraud or based upon facially defective affidavit).

Thus, we hold the family court erred in failing to determine whether the particular publication in this case afforded Brown adequate notice of the adoption proceedings.

### III. Due Process

Respondents assert the blind "John Doe" notice was adequate because Brown never acquired constitutional protection of his parental rights. *See Evans,* 303 S.C. at 108, 399 S.E.2d at 156.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Ogburn–Matthews v. Loblolly Partners,* 332 S.C. 551, 561, 505 S.E.2d 598, 603 (Ct.App.1998) (quoting *Stono River Envtl. Prot. Ass'n v. S.C. Dep't of Health & Envtl. Control,* 305 S.C. 90, 94, 406 S.E.2d 340, 341 (1991)). "The requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." *Ogburn–Matthews,* 332 S.C. at 562, 505 S.E.2d at 603; *see also Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (stating that the Due Process Clause demands "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *cf.* S.C. Const. art. I, § 22 ("No person shall be finally bound by a judicial or quasi judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard. . . .").

In *Webster v. Clanton,* our supreme court stated the general rule:

> It is a fundamental doctrine of the law that a party whose personal rights are to be affected by a personal judgment must have a day in court, or opportunity to be heard, and that without due notice and opportunity to be heard a court has no jurisdiction to adjudicate such personal rights. A judgment by a court without jurisdiction of both the parties and the subject matter is a nullity and must be so treated

by the courts whenever and for whatever purpose it is presented and relied on.

259 S.C. 387, 391, 192 S.E.2d 214, 216 (1972).

However, "the opportunity interest [of a birth father] is of limited duration as a constitutionally significant interest because of the child's need for early permanence and stability in parental relationships." *Abernathy v. Baby Boy,* 313 S.C. 27, 32, 437 S.E.2d 25, 29 (1993); *see also Lehr v. Robertson,* 463 U.S. 248, 262, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) ("If [the biological father] grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship.... If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie." (footnote omitted)); *Evans,* 303 S.C. at 111, 399 S.E.2d at 157–58 ("An unwed father must accept the responsibilities of parenthood before he acquires this constitutional protection."); *Parag v. Baby Boy Lovin,* 333 S.C. 221, 227, 508 S.E.2d 590, 593 (Ct.App.1998) ("It is incumbent ... upon the unwed father to demonstrate a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of the child before he may acquire substantial constitutional protection...."). The father must timely demonstrate his commitment to the child to be entitled to constitutional protection. *Abernathy,* 313 S.C. at 32, 437 S.E.2d at 29. To do so, the biological father must "undertake[ ] sufficient prompt and good faith efforts to assume parental responsibility and to comply with [section 20–7–1690]." *Id.*

Section 20–7–1690 provides that when the birth father is not married to the birth mother and the child is placed with adoptive parents six months or less after birth, his consent is required only if

(a) the father openly lived with the child or the child's mother for a continuous period of six months immediately preceding the placement of the child for adoption, and the father openly held himself out to be the father of the child during the six months period; or

(b) the father paid a fair and reasonable sum, based on the father's financial ability, for the support of the child or

> for expenses incurred in connection with the mother's pregnancy or with the birth of the child, including, but not limited to, medical, hospital, and nursing expenses.

S.C.Code Ann. § 20–7–1690 (Supp. 2000).

In *Evans,* our supreme court held that

> where a father's consent is not needed for an adoption due to the father's lack of accepting any of the responsibilities of fatherhood pursuant to S.C.Code Ann. § 20–7–1690 (1989), the father's due process rights are not violated by publishing a 'John Doe' notice when the identity of the father is unknown because the mother refuses to reveal it.

303 S.C. at 111, 399 S.E.2d at 158.

In *Evans,* the birth mother refused to name the biological father, and a blind "John Doe" notice of the adoption action was published by the adoptive couple's attorney. The family court determined that the biological father's consent was not required because he "did not live with his child or the child's mother for a continuous period of six months immediately preceding the placement of the child for adoption, did not hold himself out to be the child's father, and did not contribute to the expenses incurred in connection with the mother's pregnancy or with the birth of the child." *Id.* at 110–11, 399 S.E.2d at 157. However, the family court also determined that the blind "John Doe" notice was insufficient, and ordered that the South Carolina Department of Social Services ("SCDSS") must either determine the name of the birth father or reveal the name of the birth mother. *Id.*

SCDSS appealed, and our supreme court held that compelling SCDSS to reveal the birth mother's name would "undermine the confidentiality that is the foundation of the adoption process and would violate the mother's right to privacy." *Id.* at 110, 399 S.E.2d at 157. Recognizing that "[t]he mere existence of a biological link does not merit constitutional protection of due process rights," our supreme court further held that the "John Doe" notice was sufficient where the father's consent was not needed under section 20–7–1690. *Id.*

As in *Evans,* Malloy refused to name the biological father. Neither her name nor Brown's name were included in the notice. However, unlike *Evans,* the family court has made no determination whether Brown timely demonstrated his com-

mitment to the child so as to be entitled to constitutional protection. Instead, Brown's parental rights were terminated because he was in default. This default, in turn, was due to his failure to respond to the "John Doe" notice of adoption. *See* S.C.Code Ann. § 20–7–1734(E)(3) (Supp.2000) ("[F]ailure to file a response within thirty days of receiving notice constitutes consent to adoption of the child and forfeiture of all rights and obligations of the person or agency with respect to the child.").

Therefore, *Evans* is not controlling. Under section 20–7–1734(B)(3), a biological father whose consent for adoption is not required is still entitled to notice of the adoption proceeding, even though he has not timely demonstrated his commitment to the child as set forth in section 20–7–1690. Section 20–7–1736 allows the use of fictitious names, so long as service of process or notice is considered sufficient by the court. S.C.Code Ann. § 20–7–1736 (Supp.2000).

In *Evans,* the family court found the notice insufficient and required SCDSS to divulge the identity of the biological mother in order to ascertain the name of the father and include it in the notice. SCDSS appealed the order. The issue on appeal was whether the family court erred by demanding the identity of the biological mother where the court had already determined the biological father was not entitled to constitutional protection. The biological father made no appearance, and no question was raised as to the biological father's status under section 20–7–1690.

In this case, no ruling has been made as to the status of Brown's parental rights under section 20–7–1690. If, as Brown asserts, he did timely demonstrate his commitment to the child, or was significantly thwarted by Malloy in his attempts to do so, then his consent or relinquishment may have been required prior to the adoption. *See Abernathy,* 313 S.C. at 32–33, 437 S.E.2d at 29 ("To mandate strict compliance with section 20–7–1690(A)(5)(b) would make an unwed father's right to withhold his consent to adoption dependent upon the whim of the unwed mother."). If Brown sufficiently complied with section 20–7–1690 to be entitled to due process protection, then we find the case of *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), controlling.

In *Armstrong,* the biological parents divorced, and the father paid $50 per month in child support. The mother remarried, and her new husband brought an adoption proceeding to terminate the father's parental rights and adopt the child. Texas law contained a statutory provision similar in its operation to South Carolina's section 20–7–1690. Under the Texas statute, if the parent had abandoned the child for a period of two years, or had not provided support for the child for a two-year period commensurate with the parent's financial ability, then written consent of that parent to the adoption of the child was unnecessary, and adoption could be granted based upon the written consent of the judge of the juvenile court in the county in which the child resided. *Id.* at 546–47, 85 S.Ct. 1187.

The mother filed an affidavit with the juvenile court to this effect, and the court issued its consent, as a result of which the adoption was granted without notice to the father. The father filed a motion to set aside the adoption on the grounds that the affidavit of the mother was false and that he had provided adequate support. The court granted a hearing on the father's motion, and after hearing the testimony, denied the motion.

The Texas appellate court recognized that due process required notice to the father and an opportunity to be heard, but denied relief, finding that the juvenile court's hearing on the motion satisfied this requirement. The Texas Supreme Court denied an application for a writ of error.

The United States Supreme Court ruled that due process under the Constitution required adequate notice and a meaningful opportunity to be heard, both of which had been denied to the father. The Court pointed out that the post-adoption hearing was not sufficient to satisfy the second prong because the burden of proof had been shifted to the father to prove that his parental rights were entitled to due process protection.

According to *Armstrong,* it is not permissible to require the biological parent whose parental rights are in jeopardy to prove entitlement to meaningful notice in accordance with the Due Process Clause before the right attaches. Such a requirement impermissibly shifts the burden of proof from the

party who originally shouldered it by bringing the cause of action for termination of parental rights and adoption. Furthermore, it creates a paradox by requiring meaningful notice for only those who appeared in time to establish their entitlement to it. Therefore, *Evans* must be limited in its application to situations in which a final determination has been made that the biological father's consent to the adoption is not required.

The adequacy of the "John Doe" notice in this case is dependent upon whether the Respondents prove that Brown did not sufficiently comply with section 20–7–1690 to require his consent or relinquishment to the adoption. To make this determination, the family court must reach the issues posed by Brown's claim that he was prevented from assuming his parental responsibilities by Malloy's deception and avoidance. *See Abernathy,* 313 S.C. at 32–33, 437 S.E.2d at 29.

### IV. Compliance with Statute and the Order of Publication

Brown also argues the notice was defective because it did not comply with the Order of Publication or section 15–9–740.

If notice of adoption proceedings "cannot be effected by personal service, notice may be given by publication or by the manner the court decides will provide notice." S.C.Code Ann. § 20–7–1734 (Supp.2000). Section 15–9–740 provides:

> The order of publication shall direct the publication to be made in one newspaper, to be designated by the officer before whom the application is made, most likely to give notice to the person to be served and for such length of time as may be deemed reasonable not less than once a week for three weeks.

S.C.Code Ann. § 15–9–740 (1976).

The Order of Publication required that notice be published in a newspaper of general circulation in "the county where the minor Defendant was conceived and where the biological father is last known to reside." The order erroneously designated Los Angeles as the proper county. Brown alleges the publication should have been in a newspaper of general circulation in Orange County, where he actually resided and the child was in fact conceived.

The notice was published in the Daily Commerce, a newspaper which Brown contends is not generally circulated in Orange County. The proof of publication states that the Daily Commerce has been adjudged by California courts to be a paper of general circulation in Los Angeles County; however, no evidence was introduced regarding its circulation in Orange County.

Superimposed upon the requirements of the Order of Publication is the mandate of section 15–9–740, which requires publication in a newspaper "most likely to give notice to the person to be served." *See* S.C.Code Ann. § 15–9–740 (1976).

Although these issues were not addressed by the family court, we conclude they are subsumed within the due process analysis, provided the adoptive parents must continue to bear the burden they assumed in their petition for adoption of proving that Brown did not acquire parental rights in accordance with section 20–7–1690. If Brown did acquire parental rights and was thus entitled to full Constitutional protection, then clearly the "John Doe" notice is insufficient. *See Armstrong,* 380 U.S. at 550, 85 S.Ct. 1187 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

On the other hand, if Brown did not acquire parental rights and was not entitled to that protection, then any defect in the publication of the notice is harmless under the circumstances because the purpose of the notice required by section 20–7–1734 will have been fulfilled without shifting the burden of proof to Brown or placing any impermissible limitation on his right to be heard. *See* S.C.Code Ann. § 20–7–1734(E) (Supp. 2000) (allowing person or agency thirty days to provide reasons to contest, intervene, or otherwise respond is the purpose of the notice).

## *CONCLUSION*

The family court did not err in ruling that the Order of Publication was properly issued. However, the court erred in limiting the hearing to a determination of the validity of the

128

Order of Publication. Therefore, this case must be reversed and remanded, with instructions to hold a hearing on the merits of Brown's claim that the notice as published was inadequate because it failed to meet the requirements of due process.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CONNOR and HUFF, JJ., concur.