THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Father, Appellant,
v.
John and Mary Doe, Respondents.
 
 
 

Appeal From Richland County
Dorothy Mobley Jones, Family Court Judge

Unpublished Opinion No.  2007-UP-117
Submitted March 1, 2007  Filed March 8, 2007

AFFIRMED

 
 
 
John D. Elliott, of Columbia, for Appellant.
James Fletcher Thompson, of Spartanburg, for Respondent.
Richard Giles Whiting, of Columbia, for Guardian Ad Litem.
 
 
 

PER CURIAM:  Father appeals the family courts order upholding the Does adoption of Child, finding Fathers consent to the adoption was not required, and terminating Fathers parental rights.  We affirm.[1]
FACTS
Father and Mother[2] met in the fall of 2001 at a cub scout meeting for their sons.  Thereafter, Mother and Father had a brief romantic relationship wherein they had sexual intercourse on a few different occasions.
In late November 2001, Mother told Father that she was pregnant.  A pregnancy test confirmed Mothers assertion.  Thereafter, Mother informed Father that she wanted to have an abortion.  Father, at least in part motivated by his personal beliefs, argued against Mother having an abortion.  Nevertheless, Mother insisted on having the abortion and asked Father to assist her financially during this period.  Father gave Mother around $250.00.
In the ensuing weeks, Mother and Fathers relationship, which was already strained, completely subsided.  Mother embarked on a drug binge in the latter part of December and subsequently entered a rehab program in the Richland County area.  In February of 2002, Mother moved to the Shalom House, a halfway house in Anderson County, where she remained through the end of June 2002.  During this period, Mother and Father did not see one another.
Mother decided to put Child up for adoption and contacted Bethany Christian Services, an adoption agency in Columbia.  In June 2002, Mother provided Bethany with a sworn affidavit explaining, in relevant part:

[Child] of course has a birthfather, unfortunately his identity is unknown to me.  During the time (mid-Nov. 01) that she was conceived I was drinking and using drugs.  I had not had sex in several months before the few days in Nov. that I had sex with at least 3 men over a weekends time.  

In July 2002, she provided Bethany with another affidavit stating she was unsuccessful in her attempts to discover the names of the three men with whom she had sex with in mid-November.  Mothers July affidavit further provides, I feel as if I have exhausted all options of locating the father or knowing who it could be.
Child was born on August 11, 2002.  Mother then signed a Relinquishment for Adoption, which gave custody of Child to Bethany.  On August 16, 2002, Child was placed with her prospective adoptive parents, John and Mary Doe.  The Does published a notice of the adoption of Child in January and February of 2003; the notice provided that an action for the adoption of minor child Baby Doe, born to Jane Doe, has been filed.  In March 2003, the adoption was concluded and an adoption decree entered.
In November 2003, Father began to wonder whether Mother ever had an abortion.  Father asked Mothers mother about the abortion, and learned Mother actually gave Child up for adoption.  Mothers mother provided Father with pictures of Child that Father believed looked like him.[3]
Father then investigated the adoption of Child and discovered the Does were her adoptive parents.  In late November 2003, Father met with and informed John Doe that Child was Fathers biological child.  During this initial meeting, Father offered to have a co-parenting relationship of some sort; John Doe refused Fathers suggestion.  In January 2004, Fathers attorney sent the Does a letter again inquiring whether they were willing to have a co-parenting situation and explaining that Father was willing to contribute financially.
In February 2004, after Father received no response from the Does, he initiated an action to set aside the adoption of Child and grant him sole entitlement to Childs legal and physical custody.  After a hearing, the family court upheld the adoption, found Father was not required to provide consent, terminated Fathers parental rights, and held removal of Child from the Does would be against Childs best interest.  This appeal followed.  
STANDARD OF REVIEW
When reviewing the factual determinations of the family court, an appellate court may take its own view of the preponderance of the evidence.  Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  Where the evidence is disputed, the appellate court may adhere to the findings of the family court, who was in a superior position to judge the witnesses demeanor and veracity.  Id.  However, the appellate courts broad scope of review does not relieve the appellant of the burden of showing that the family court committed error.  Ex parte Morris, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006).
LAW/ANALYSIS
Father contends the family court erred in failing to set aside the adoption of Child based on Mothers alleged extrinsic fraud.  Specifically, Father argues Mothers failure to name Father as a potential father in her affidavit to Bethany deprived Father of the opportunity to participate in the adoption proceeding.  We disagree.
Section 20-7-1800(B) of the South Carolina Code (Supp. 2006) provides that the family court may set aside a decree of adoption on the ground of extrinsic fraud, which is defined as fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.  
In Brown v. Malloy, this court analyzed whether a decree of adoption could be set aside where a birthfather alleged birthmother fraudulently precluded his participation in the adoption proceedings.  345 S.C. 113, 546 S.E.2d 195 (Ct. App. 2001).  In Brown, the birthmother provided the incorrect county of the childs conception and the birthfathers residence which led to publication of the notice of adoption proceedings in a county in which birthfather did not reside.  Id. at 116-17, 546 S.E.2d at 196-97.  The family court found the birthmothers misrepresentations were unintentional and upheld the adoption.  Id. at 119, 546 S.E.2d at 198.  This court affirmed the family courts decision based on our determination that the issue was heavily dependent on credibility.  Id.  Nevertheless, our holding in Brown suggests that extrinsic fraud may result if a birthmother intentionally misrepresents facts that prevent the birthfather from being notified of the possible adoption of child.  Id. at 118-19, 546 S.E.2d at 197-98.
In this case, the record indicates Mother has always believed that Father was not Childs biological father.  Consistent with her affidavit to Bethany, Mother testified that she did not even know she was pregnant when she confronted Father about being pregnant and sought money for an abortion, explaining that she was just trying to get money out of a man.  Similarly, when confronted about failing to give Father a chance to take a DNA test, Mother explained, I didnt believe he was the father.  Mother also testified that she did not remember ever having sex with Father without using a condom.  Further, after learning Father was contesting the adoption, Mother phoned Father and left a message on his answering machine in which she assured him there was a 99.9 percent guarantee that you are not the father . . . .  Likewise, in a letter Mother sent to the Does after Father began to contest the adoption, Mother apologized for all that has happened, and explained, I did the best I could and I thought I was doing everything right.
We recognize there is evidence in the record that indicates Mother lied to Father about getting an abortion and Father believed the lie until he learned otherwise in November 2003.  We also acknowledge there is testimony from one of Fathers friends about a long conversation they had in which Father expressed his deep regrets about the supposed abortion of Child.  The friend also testified Father appeared genuinely excited and surprised after learning Child was not aborted.
Nevertheless, after a thorough review of the record, we find Father failed to provide clear and convincing proof that Mother committed extrinsic fraud by neglecting to identify him as a possible father.  In this case, the family court, who saw and heard the witnesses, found Mother credible and Father not credible.  In this instance, we defer to the family courts findings because the evidence in the record supports the courts holding.  Having found that Father failed to prove Mother committed extrinsic fraud, we need not address Fathers remaining issues.  See Whiteside v. Cherokee County Sch. Dist. No. One, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating the appellate court need not address remaining issues when resolution of prior issue is
dispositive).
 AFFIRMED.
 GOOLSBY and STILWELL, JJ., and CURETON, A.J., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  This case is sealed.  As such, all names are omitted in order to protect the parties identities.  
[3]  In April 2004, DNA test results confirmed that there was a 99.97% probability Father was Childs birthfather.